IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD G. KENDALL, )
)
        Plaintiff, )
)
v. ) Civil Action No. 09-169J
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF )
SOCIAL SECURITY, )
)
        Defendant. )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 28th day of September, 2010, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 7) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, denied. The Commissioner's decision of December 24, 2008, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence.

"Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed his pending application for disability insurance benefits on September 14, 2007, alleging a disability onset date of December 1, 2002, due to various physical and mental impairments. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on December 10, 2008, at which plaintiff, appearing *pro se*, testified. On December 24, 2008, the ALJ issued a decision finding that plaintiff is not disabled. On June 11, 2009, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

AO 72
(Rev. 8/82)

Plaintiff was 51 years old at the time his insured status expired[1] and is classified as a person closely approaching advanced age under the regulations. 20 C.F.R. §404.1563(d). Plaintiff has at least a high school education. He has past relevant work experience as a laborer, plumber and sales representative, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from a number of severe physical and mental impairments[2], those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform a significant range of light work but with certain restrictions recognizing the limiting effects of

---

[1] The ALJ found that plaintiff met the disability insured status requirements of the Act on his alleged onset date but that he only had acquired sufficient coverage to remain insured through March 31, 2007. Accordingly, plaintiff was required to show that he became disabled prior to his date last insured.

[2] Specifically, the ALJ found that plaintiff suffers from the severe impairments of: degenerative disc disease/lumbar spinal stenosis; morbid obesity; adjustment disorder with depression; major depressive disorder, single episode, modified; adult anti-social behavior; impulse control disorder; learning disability, not otherwise specified; and, a history of alcohol abuse. The ALJ found that plaintiff's hypertension is non-severe.

his impairments. (R. 16). Taking into account these limiting effects, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon his age, education, work experience and residual functional capacity, including plastics inspector, small parts assembler and weigher/scale operator. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform his past relevant work, he is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[3] for determining whether

---

[3] The ALJ must determine in sequence: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work;

- 4 -

a claimant is under a disability. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises three challenges to the ALJ's findings: (1) in assessing plaintiff's residual functional capacity, the ALJ failed to evaluate all of plaintiff's impairments; (2) the ALJ failed to evaluate all of the medical evidence; and, (3) the ALJ's residual functional capacity finding imposed limitations consistent with sedentary work which would render plaintiff disabled under the Medical-Vocational guidelines ("grids"). Because the ALJ failed to address pertinent medical evidence relating to a possible severe ankle impairment, this case must be remanded to the Commissioner for further proceedings.

It is axiomatic in social security cases that, although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reasons for discounting that evidence. Fargnoli, 247 F.3d at 43. Where the ALJ fails to consider and explain his reasons for discounting all of the relevant evidence before him, he has not met his responsibilities under the Act and the case must be remanded with instructions "to review all of the pertinent medical evidence,

---

and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520.

explaining any conciliations and rejections." Burnett v. Apfel, 220 F.3d 112, 122 (3d Cir. 2000).

Here, the ALJ did not adequately consider all of the pertinent medical evidence. In particular, the record contains numerous reports from three different treating sources which suggest a possible severe ankle impairment. The ALJ failed to address any of those reports.

First, the medical records from plaintiff's treating physician, Dr. Mark Maloney, consistently refer to plaintiff's complaints of chronic right ankle pain and instability. In February of 2004, Dr. Maloney reported that plaintiff complained of right lower extremity numbness and that his right leg buckles out from under him on occasion. A physical examination showed deep tendon reflexes in his right ankle were 2/4. (R. 258). In November of 2004, Dr. Maloney's physical examination showed a "collapse of the longitudinal and transverse arch affecting the relationship of the ankle to the leg." (R. 189). Dr. Maloney reported on November 11, 2004, that plaintiff's deep tendon reflexes at the ankle actually <u>improved</u> to 2/4. (R. 188).

In July of 2006, Dr. Maloney again found plaintiff's deep tendon reflexes to be 2/4, but also found on physical examination that plaintiff's right ankle dorsiflexion was 0. (R. 181). By September of 2006, Dr. Maloney noted "decreased ankle strength which is a recurrent injury" and recorded his impression of an "old right ankle injury with ankle weakness and instability of the right ankle." (R. 180).

AO 72
(Rev. 8/82)

On January 30, 2007, the record shows that plaintiff again presented to Dr. Maloney with complaints of right ankle and back pain. (R.179). Plaintiff reported that his ankle buckled causing him to fall and Dr. Maloney recorded plaintiff's continued and progressive lower extremity weakness and increasing difficulty in ambulating. Upon physical examination, Dr. Maloney noted that plaintiff's ankle "appears to be more unstable" and reported that plaintiff had decreased dorsiflexion strength and almost absent plantar flexion. Significantly, Dr. Maloney reported that plaintiff's "ankle reflexes are almost absent or absent at 0/4 bilaterally." (Id.)

Despite all of the references in Dr. Maloney's office notes relating to plaintiff's chronic right ankle pain, weakness and instability, the ALJ never specifically mentioned anything about plaintiff's ankle in his decision, other than to note that in April of 2004 Dr. Maloney found plaintiff to have 5/5 muscle strength in the upper and lower extremities. (R. 17).

Yet Dr. Maloney was not the only physician of record who referenced plaintiff's ankle problems. In a report dated June 21, 2005, Dr. Shaukat Hayat also mentioned plaintiff's "weakness of the right foot." (R. 358). The ALJ's only reference to this report was to note that Dr. Hayat had recorded that plaintiff had "a normal gait." (R. 17).

Most glaring, however, is the ALJ's failure to even mention two reports from a podiatrist, Dr. Lara Allman, who treated plaintiff for his ankle difficulties in April of 2004. Dr. Allman

AO 72
(Rev. 8/82)

noted on April 1, 2004, that plaintiff had a "very unstable ankle" that "gives away [sic] multiple times during the week." After noting the results of her physical examination, Dr. Allman diagnosed plaintiff with "ankle instability secondary to injury and attenuated ligaments." (R. 317). In a subsequent report on plaintiff's follow-up visit, Dr. Allman noted that she discussed the results of plaintiff's MRI which showed "questionable chronic tear of the peroneal tendon." She recorded that plaintiff still was walking with a significant limp and noted "diffuse pain on palpation." She also reported that she discussed with plaintiff possible surgical intervention. (R. 315).

The foregoing medical evidence from three different sources seems to suggest, at a minimum, that plaintiff suffers from a severe right ankle impairment.[4] However, the ALJ did not consider such an impairment at all, either at step 2 to ascertain whether it is a severe impairment, or at step 5 to ascertain whether plaintiff's chronic ankle pain and instability would result in any additional limitations in plaintiff's residual functional capacity. Accordingly, the court will remand this case for

---

[4] At step 2 of the sequential evaluation process, the ALJ must determine whether a claimant's impairment is "severe" as defined in the Act. 20 C.F.R. §404.1520. "[An] impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §404.1521(a). The step 2 inquiry is a de minimus screening device and, if the evidence presents more than a slight abnormality, the step 2 requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546. Importantly, "[r]easonable doubts on severity are to be resolved in favor of the claimant." Id. at 547.

noted on April 1, 2004, that plaintiff had a "very unstable ankle" that "gives away [sic] multiple times during the week." After noting the results of her physical examination, Dr. Allman diagnosed plaintiff with "ankle instability secondary to injury and attenuated ligaments." (R. 317). In a subsequent report on plaintiff's follow-up visit, Dr. Allman noted that she discussed the results of plaintiff's MRI which showed "questionable chronic tear of the peroneal tendon." She recorded that plaintiff still was walking with a significant limp and noted "diffuse pain on palpation." She also reported that she discussed with plaintiff possible surgical intervention. (R. 315).

The foregoing medical evidence from three different sources seems to suggest, at a minimum, that plaintiff suffers from a severe right ankle impairment.[4] However, the ALJ did not consider such an impairment at all, either at step 2 to ascertain whether it is a severe impairment, or at step 5 to ascertain whether plaintiff's chronic ankle pain and instability would result in any additional limitations in plaintiff's residual functional capacity. Accordingly, the court will remand this case for

---

[4] At step 2 of the sequential evaluation process, the ALJ must determine whether a claimant's impairment is "severe" as defined in the Act. 20 C.F.R. §404.1520. "[An] impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §404.1521(a). The step 2 inquiry is a de minimus screening device and, if the evidence presents more than a slight abnormality, the step 2 requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546. Importantly, "[r]easonable doubts on severity are to be resolved in favor of the claimant." Id. at 547.

AO 72
(Rev. 8/82)

additional consideration of the medical evidence relating to plaintiff's ankle.[5]

On remand, the ALJ must revisit his step 2 finding after consideration of all of the evidence of record. If he concludes after reconsideration that plaintiff's ankle impairment is not severe, he must explain the reasons for doing so. In addition, the ALJ also must reconsider his step 5 finding and incorporate into his residual functional capacity finding, and hypothetical to the vocational expert[6], any additional limitations, supported by the medical record, arising from plaintiff's ankle problems.

In doing so, the ALJ must specifically address <u>all</u> of the relevant medical evidence and explain his reasons for rejecting or discounting any particular evidence. The ALJ, of course, does not have to accept any findings from any particular medical source, so long as he adheres to the standards set forth in the regulations for evaluating medical evidence, 20 C.F.R. §404.1527(d)(2), and gives some indication of the evidence he rejects and his reasons for rejecting it.

---

[5] The court has considered plaintiff's remaining arguments and, upon review of the record, is satisfied that the ALJ's residual functional capacity finding as it relates to plaintiff's other impairments is supported by substantial evidence. Thus, the only issues for remand are whether plaintiff has a severe ankle impairment and whether it results in any additional functional limitations.

[6] It is well-settled that a vocational expert's response to a hypothetical that does not reflect all of a claimant's impairments that are supported by the record cannot be considered substantial evidence supporting a step 5 finding of not disabled. <u>Ramirez v. Barnhart</u>, 372 F.3d 546 (3d Cir. 2004).

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: James C. Ward, Esq.
Porta-Clark + Ward
100 Fleet Street
Suite 101
Pittsburgh, PA 15220

John J. Valkovci, Jr.
Assistant U.S. Attorney
224 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901